**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHRINK PACKAGING SYSTEMS CORPORATION, a Delaware corporation, *Plaintiff*, v. CHRISTOPHER KIST, *Defendant*. | Civil Action No. 22-CV-04967 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns allegations of unfaithful conduct by a corporate executive. Plaintiff Shrink Packaging Systems Corporation ("SPS" or "Company") sues its former President, Christopher Kist, seeking a declaratory judgment as to an employment agreement (Count I), as well as alleging breach of contract (Count II and III); breach of fiduciary duty (Count IV); breach of the duty of loyalty (Count V); violation of the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38-1 ("NJCROA") (Count VI); violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, ("DTSA") (Count VII); violation of the New Jersey Trade Secrets Act, N.J.S.A. 34:5A-15 ("NJTSA") (Count VIII); conversion (Count IX); and unjust enrichment (Count X). Currently pending before the Court is Defendant's motion to dismiss Counts IV through X of the First Amended Complaint ("FAC"). D.E. 13. The Court reviewed the parties' submissions[1] and

---

[1] The submissions consist of SPS' motion, D.E. 13, and the accompanying brief, D.E. 13-1 ("Br."); Plaintiff's opposition, D.E. 15 ("Opp."); and SPS' reply, D.E. 18-1 ("Reply").

decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[2]

Plaintiff SPS is a "distributor of packaging machinery and materials, and provides engineering services, technical support, and parts." FAC ¶ 9. Its founders were James Gieber ("Jim") and Frank James ("Frank"), who each owned a fifty percent ownership interest. *Id.* ¶ 8. Frank died in 2017, and his fifty percent interest in SPS passed to his son, F. Andrew James ("Andy"). *Id.* ¶ 10. Jim died on November 11, 2019, and his ownership interest passed to his son Jeffry Gieber ("Jeff"). *Id.* ¶ 11.

Defendant Kist was originally hired by SPS in 2001 and became its President on February 1, 2007. *Id.* ¶¶ 18-19. "On July 10, 2012, the Board approved and authorized Jim to execute a Deferred Compensation Agreement with Kist (the '2012 Deferred Compensation Agreement')." *Id.* ¶ 23. Plaintiff alleges that "[i]n October 2017, Kist approached Andy and Jim regarding a new employment agreement." *Id.* ¶ 28. Plaintiff asserts that "Andy expressed to Jim, with a copy to Jeff and Kist, his disapproval of entering into a new agreement with Kist before he and Jim could agree to a succession plan." *Id.* ¶ 30. Kist later allegedly sent a draft agreement to Jim for discussion purposes, *id.* ¶ 31, to which Andy again objected on February 13, 2018. *Id.* ¶ 35. Plaintiff claims that "Jim and Jeff decided to unilaterally, and unbeknownst to Andy, have Jim sign the employment agreement allegedly on SPS' behalf with Kist in Jim's capacity as SPS' then-CEO . . . (the '2018 Kist Employment Agreement')." *Id.* ¶ 38. Among other things, the 2018 Kist

---

[2] The factual background is taken from Plaintiff's FAC, D.E. 5, and the exhibits thereto, D.E. 5-1. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied upon* in the complaint" (emphasis in original) (citation omitted)).

Employment Agreement made Kist CEO upon Jim's resignation or removal, granted Kist a bonus, "significantly mov[ed] up the time frame in which Kist became entitled to begin receiving his deferred compensation under the 2012 Deferred Compensation Agreement," and "require[d] promissory note interest to be paid on existing stockholder loans." *Id.* ¶¶ 40, 53.

Plaintiff claims that because the 2018 Kist Employment Agreement was without prior Board or stockholder approval, the agreement "was entered into in contravention of the By-Laws and governing statutes, over Andy's known and vociferous objection, and in deviation from the parties' course of dealing since SPS' incorporation." *Id.* ¶¶ 39-40. Plaintiff further asserts, upon information and belief, that Kist had previously received the By-Laws, "or was otherwise aware of its contents." *Id.* ¶ 21. Plaintiff explains that the 2018 Kist Employment Agreement "required formal approval by Andy in his capacity as a Board member and as a SPS stockholder," *id.* ¶ 40, and characterizes is as *ultra vires* as a result, *see, e.g.*, *id.* ¶¶ 44, 53.

Andy informed Jeff and Jim of his position that they did not have authority to enter into the 2018 Kist Employment Agreement without board or shareholder approval, which would require Andy's approval as a fifty-percent shareholder and one of two board members. *Id.* ¶ 45. Jeff allegedly explained his belief, based on advice of counsel, that Jim had the authority as CEO to execute the 2018 Kist Employment Agreement. *Id.* ¶ 46. Jeff also stated his belief that without the 2018 Kist Employment Agreement, "[t]he possibility of [Kist] leaving the organization is too disruptive to our company and our employees." *Id.* Plaintiff alleges that Andy emailed Henry Nelson Massey, "SPS' long-time corporate counsel," and asked him to review the 2018 Kist Employment Agreement. *Id.* ¶ 49. Massey allegedly "concluded that it was 'NOT proper' for the 2018 Kist Employment Agreement 'to be entered into without approval of the Board.'" *Id.* ¶ 51.

3

Plaintiff continues that "[u]ntil Jeff's passing in October, 2021, the Board and SPS' stockholders were essentially in deadlock, as Andy and Jim, or later Jeff, both sat on the Board and each controlled 50% of the Company's shares[.]" *Id.* ¶ 55. Plaintiff alleges that Andy could do little about the situation "[b]ecause Kist, in his capacity as the Company's President (and later its *de facto* CEO), ran the day-to-day affairs of SPS, and because Jeff could essentially block Andy from exercising any board or stockholder control over the direction of the Company[.]" *Id.* ¶ 56. Plaintiff asserts that "the Giebers and Kist were secretly conspiring with each other, and attorneys hired by them using SPS resources, to squeeze Andy out of SPS." *Id.* ¶ 57.

Andy allegedly "filed for arbitration against Jim and Jeff" and "separately filed a lawsuit against Kist and the Giebers." *Id.* ¶¶ 59-66. Plaintiff explains that during discovery in the Arbitration, "Andy acquired access to the Company's servers" and "uncovered evidence of the long-festering conspiracy . . . between the Giebers and Kist to oppress Andy and freeze him out of SPS." *Id.* ¶¶ 69-70. Plaintiff states that from early 2017 through February 2018, "Jim and Jeff shared a series of stratagems with Kist and lawyers that the Giebers and Kist caused SPS to engage to develop a strategy to sideline Andy from Company affairs, and to ultimately cause his expulsion from SPS, either through litigation or through a coercive settlement." *Id.* ¶ 71. For example, Plaintiff indicates that "Jim and Jeff sought and exchanged legal advice with Kist—secretly paid for by SPS—regarding the best way of repressing Andy's ability to influence the Company's operations." *Id.* ¶ 72. Plaintiff claims that Jim, Jeff, and Kist's methods of oppressing Andy "included a strategy to . . . elevate Kist to the position of CEO and redefine that role to allow better control of Andy" or to "remove Andy from Company operations completely by offering him a passive stake in SPS; or, if Andy declined, bringing an action to force a buyout of his shares at an enormous discount." *Id.* ¶ 73. Plaintiff continues that after Andy learned of the scheme to oust

him, and of Kist's misuse of company funds, SPS terminated Kist for cause on June 15, 2022.  *Id.*
¶ 74.

Plaintiff alleges that Kist signed SPS' "Shrink Packaging Systems Corporation Agreement
Concerning Confidential Information" in 2001.  *Id.* ¶ 83; D.E. 5-1 at 60.  In the agreement, Kist
allegedly agreed that SPS information "shall not be removed from Company premises except in
pursuit of SPS business, and shall be promptly delivered to the Company, without retaining any
copies, if I should leave SPS for any reason, or at any time if so requested by SPS."  *Id.*  In addition,
Plaintiff claims that the 2012 Deferred Compensation Agreement required Kist to "maintain the
confidentiality of SPS' confidential information at all times and to not disclose such information
other than as authorized by SPS."  FAC ¶ 85.  The 2012 Deferred Compensation Agreement
"further states that upon termination of Kist's employment or at the request of SPS, Kist is required
to promptly return any and all confidential information in Kist's possession or control without
retaining any copies thereof."  *Id.* ¶ 87.  Plaintiff alleges that the 2018 Kist Employment Agreement
"also contains restrictions on the use or reproduction of SPS' confidential and proprietary
information."  *Id.* ¶ 87 n.4.

Plaintiff adds that during a forensic review during the arbitration, a search of Kist's emails
allegedly "uncovered that Kist, among other things, engaged in activities that violated his
confidentiality obligations to" SPS.  *Id.* ¶ 76.  Plaintiff asserts that "[t]he forensics review revealed
that beginning on or around October 3, 2021—the day after Jeff passed away—Kist began
transferring, via his secured SPS email to his personal email address, documents containing highly
confidential, proprietary, and trade secret information pertaining to SPS."  *Id.* ¶ 77.  This
information allegedly included "a) Documents detailing SPS' financials; b) SPS' supplier and
business information; c) SPS competitive threat analyses; d) Sales and cost value of SPS' services;

e) SPS' financial projections and financial details; f) SPS governance documents; and g) SPS distribution lists." *Id.*  Plaintiff claims, "[u]pon information and belief, Kist, no longer an employee of SPS, has retained this highly confidential proprietary and/or trade secret information without authorization. *Id.* ¶ 80.

Plaintiff asserts that "[a]t the time Kist transferred the . . . information and documents from his work computer to his personal possession via email, Kist did not have authority to transfer or use the highly confidential proprietary and/or trade secret information in such a manner." *Id.* ¶ 88. Further, according to Plaintiff, "Kist did not, and does not, have the authority to retain" the information. *Id.* ¶ 89.  Plaintiff also alleges that is "has conducted, and will continue to conduct, forensics reviews to determine the scope of the information theft and the damages to SPS" and that these reviews "have cost SPS tens of thousands of dollars in addition to the continuing risk of harm to SPS posed by the unsecured highly confidential proprietary and/or trade secret information currently in Kist's possession." *Id.* ¶ 91.

Plaintiff filed the Amended Complaint on September 9, 2022.  D.E. 5.  The present motion followed, and seeks dismissal of Counts IV through X.  D.E. 13.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, a plaintiff must "allege sufficient facts to raise a

reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).   In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).   Restatements of the elements of a claim are legal conclusions and are not entitled to a presumption of truth.   *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).   The Court, however, "must accept all of the complaint's well-pleaded facts as true[,]" and grant a plaintiff the benefit of all reasonable inferences arising therefrom.   *Fowler*, 578 F.3d at 210.   The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

## III.   ANALYSIS

### A.   Breach of Fiduciary Duty and Breach of Duty of Loyalty – Counts IV and V

Count IV alleges that Kist

> breached his duty of loyalty and good faith by, among other things, (a) intentionally conspiring with the Giebers to freeze Andy out of the Company's decision making despite his being a director and fifty percent owner of SPS at all times relevant hereto, and (b) placing his own interests over those of SPS by causing it to enter into the *ultra vires* 2018 Kist Employment Agreement.

FAC ¶ 113.   Count V alleges that the same actions violated his duty of loyalty to SPS. *Id.* ¶¶ 115-18.   Plaintiff adds that "Kist's transfer of the highly confidential proprietary and/or trade secret information is a breach of . . . his fiduciary duties and duty of loyalty owed to SPS[.]" *Id.* ¶ 90.

At the outset, Plaintiff argues that Delaware law governs these claims because SPS is a Delaware corporation.   Opp. at 24.   Defendant argues that "the choice-of-law question is inconsequential with respect to the disposition of Plaintiff's breach of fiduciary duty and duty of loyalty claims because there is no evidence any *actual conflict* exists between Delaware and New

7

Jersey law in this area." Reply at 13.  "A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules" to determine what law governs the substantive issues of a case.  *Maniscalco v. Brother Int'l Corp.*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011).  New Jersey, the forum state here, utilizes the "most significant relationship" test to determine the applicable substantive law.  *Id.*; *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 373 (D.N.J. 2019).  The test consists of two prongs.  The first requires that a court assess the potentially applicable laws to determine if there is an actual conflict between the laws at issue.  *Maniscalco*, 793 F. Supp. 2d at 704.  An actual conflict exists "if there is a distinction between" the relevant laws.  *Buccilli v. Nat'l R.R. Passenger Corp.*, No. 08-4214, 2010 WL 624113, at *2 (D.N.J. Feb. 17, 2010) (internal quotation omitted).  Where no conflict exists, the court applies the forum state's law.  *Maniscalco*, 793 F. Supp. 2d at 704.

If there is a conflict, the second prong requires the court to "determine which state has the 'most significant relationship' to the claim at issue by weighing the factors set forth in the Restatement section that corresponds to Plaintiffs' cause of action."  *Id.* at 705.  While Plaintiff claims that Delaware law applies, it does not indicate any conflict between New Jersey and Delaware law.  Indeed, Plaintiff analyzes the claims under Delaware law but notes that if New Jersey law governs, the claims "still survive dismissal for the reasons detailed below."  Opp. at 24 n.13.  Because the parties appear to agree that there is no conflict between New Jersey and Delaware law, the Court applies New Jersey law.[3]  *Maniscalco*, 793 F. Supp. 2d at 704.

To state a claim for breach of fiduciary duty under New Jersey law, a plaintiff must allege "(1) a fiduciary relationship comprised of 'two persons when one person is under a duty to act for

---

[3] As to the other state law claims, the parties rely exclusively on New Jersey law without any choice of law analysis.  Seeing no reason to depart, the Court applies New Jersey law to those claims as well.

or give advice for the benefit of another on matters within the scope of their relationship,' and (2) a 'violation of that trust.'" *Swift v. Pandey*, No. 13-649, 2013 WL 6022093, at *8 (D.N.J. Nov. 13, 2013) (quoting *F.G. v. MacDonell*, 696 A.2d 697, 703-04 (N.J. 1997)).   As to the duty of loyalty, "[u]nder New Jersey law, '[a]n employee owes a duty of loyalty to the employer and must not, while employed, act contrary to the employer's interest.'" *Cent. Lewmar, L.P. v. Gentilin*, No. 03-4671, 2005 WL 1308235, at *3 (D.N.J. June 1, 2005) (quoting *Chernow v. Reyes*, 570 A.2d 1282, 1284 (App. Div. 1990), *certif. denied*, 584 A.2d 245 (N.J. 1990)).   "Both causes of action require a plaintiff to plead resulting 'harm to the plaintiff.'" *Canon Fin. Servs., Inc. v. Bray*, No. 14-3829, 2015 WL 851816, at *4 (D.N.J. Feb. 26, 2015) (citations omitted).   Defendant agrees that he owed fiduciary duties and a duty of loyalty to SPS, Reply at 13-14, but contends that he did not breach those duties.

First, as to the alleged conspiracy involving Kist and the Giebers, FAC ¶ 113, Defendant argues that "Plaintiff does not explain or provide any well-pled factual allegations as to how or why this would or could constitute a breach of Kist's fiduciary duty *to SPS* itself; such a claim, if any, would belong to Andy himself."   Br. at 23 (emphasis in original).   Plaintiff responds that through this conspiracy, "Kist exploited SPS' time and resources to remove the only director who disagreed with him to the detriment of the entire Company."   Opp. at 29.   But the FAC does not allege how such "conspiracy" harmed SPS or was otherwise against its interests.   While the allegations reflect actions detrimental to Andy's interests, Andy is not a party in this action and Kist did not allegedly owe him any duty.   Plaintiff, SPS, did not set forth how its interests were harmed, and thus has failed to state a claim based on the allegedly conspiracy to "freeze Andy out."   *Canon Fin. Servs.*, 2015 WL 851816, at *4.

As to the alleged "*ultra vires* 2018 Kist Employment Agreement," FAC ¶ 113, Defendant argues that "Plaintiff fails to explain how this transaction was adverse to the interests of, damaged, or was otherwise unfair to SPS[.]"  Br. at 23.  Plaintiff argues that the "*ultra vires* 2018 Kist Employment Agreement provided Kist with substantial benefits in terms of his ability to control SPS and caused the Company to incur significant liabilities which benefited Kist."  Opp. at 28. Plaintiff claims that "there is a reasonable, if not overwhelming, inference that Kist stood on both sides of this transaction since SPS' execution of this document with him, and the millions of dollars in benefits that it bestowed upon him, plainly constituted a self-interested transaction because of his role in the Company."  *Id.*  The Court disagrees.  First, the ordinary fact that an executive's employment agreement provides him with power and compensation does not create a reasonable inference that the employee "stood on both sides of the transaction" absent actual factual allegations to that effect.  Additionally, Plaintiff has not alleged that the 2018 Kist Employment Agreement provided Kist any unreasonable or improper compensation or benefits or that it was otherwise against the Company's interests.  Plaintiff argues further that the execution of the 2018 Kist Employment Agreement is "the culmination of the Kist-Gieber conspiracy to tilt the balance of power and ultimate control of SPS in favor of Kist and further limit the role of the sole dissenting director and shareholder, Andy."  Opp. at 28.  But again, Plaintiff does not plausibly allege how such "conspiracy" or the 2018 Kist Employment Agreement itself caused any harm to the Company or were not in the Company's best interests.  Plaintiff's claims in Counts IV and V fail to the extent they are premised on "freez[ing] Andy out of the Company's decision making" and "causing [SPS] to enter into the *ultra vires* 2018 Kist Employment Agreement."

Plaintiff also argues that Kist sending "confidential, proprietary, and trade secret information pertaining to SPS from secure Company servers to his personal email address"

violated his fiduciary duty and duty of loyalty.  Opp. at 29-30; FAC ¶ 90.  Defendant did not

address this theory in either his moving Brief or in his Reply.  Thus, Plaintiff's breach of fiduciary

duty and duty of loyalty claims survive to the extent they allege that Kist breached such duties by

sending himself Plaintiff's information.

### B.  New Jersey Computer Related Offenses Act – Count VI

Count VI alleges that Kist violated the NJCROA.  "The New Jersey Computer Related

Offenses Act makes it unlawful to alter, damage, access, or obtain data from a computer without

authorization."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 277 (3d Cir. 2016).  The

statute grants a private right of action to

> [a] person or enterprise damaged in business or property as a result
> of . . .  a. The purposeful or knowing, and unauthorized altering,
> damaging, taking or destruction of any data, data base, computer
> program, computer software or computer equipment existing
> internally or externally to a computer, computer system or computer
> network; . . . or e. The purposeful or knowing accessing and reckless
> altering, damaging, destroying or obtaining of any data, data base,
> computer, computer program, computer software, computer
> equipment, computer system or computer network.

N.J.S.A. § 2A:38A-3.[4]

Defendant first argues that Plaintiff has not plausibly pled that "Kist was not authorized to

*access* the information/data at issue when he did . . . . Indeed, he was the Company's top officer."

Br. at 15-16 (emphasis added).  But the NJCROA prohibits the "unauthorized . . . *taking* . . . of

any data."  N.J.S.A. § 2A:38A-3a.  And Plaintiff plausibly pleads that Kist took SPS data in an

unauthorized manner as required by the statute.  FAC ¶¶ 76, 77, 120.[5]

---

[4] There are other bases for liability under the statute, but subsections "a" and "e" appear to be
relevant here.

[5] Kist's allegedly unauthorized taking and retention of the information is the basis of Plaintiff's
breach of contract claim in Count III.  FAC ¶¶ 106-10.  Defendant does not challenge that claim.

Defendant cites *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016), in support.  In that case, the Third Circuit noted that "a claim under the [NJCROA] require[s] proof of some activity vis-à-vis the information other than simply gaining access to it, and the plaintiffs allege the defendants did no more than 'gain access' to their information here." *Id.* at 277 (citation and internal quotation marks omitted).  Here, Plaintiff alleges that Kist not only gained access to the information, but then emailed it to himself in violation of his agreements with the Company and Company policies.  FAC ¶ 77.  Thus, *In re Nickelodeon* is distinguishable. Defendant also relies on *PNC Mortgage v. Superior Mortgage Corp.*, No. 09-5084, 2012 WL 627995 (E.D. Pa. Feb. 27, 2012), but that case is distinguishable for the same reason.  The court there found that the plaintiff's NJCROA claim failed because while the plaintiff pled that the defendant had accessed the information in an unauthorized manner, "there [were] no facts that show that any data or information was taken." *Id.* at 5.

Defendant further argues that the NJCROA claim should be dismissed because Plaintiff has not adequately pled that it was "damaged in business or property."  Br. at 16-17.  Such damage is necessary to assert a NJCROA claim.  *Lexpath Techs. Holdings, Inc. v. Welch*, 744 F. App'x 74, 82 (3d Cir. 2018).  Plaintiff claims that "SPS has conducted, and will continue to conduct, forensics reviews to determine the scope of the information theft and the damages to SPS."  FAC ¶ 91. Plaintiff also alleges that it "has been damages in an amount to be proven at trial." *Id.* ¶ 124.

As to the costs of conducting forensic reviews, "such 'investigative costs' are not 'damage[s] in business or property'" as required by the statute.  *Bramshill Invs., LLC v. Pullen*, No. 19-18288, 2020 WL 4581827, at *5 (D.N.J. Aug. 10, 2020) (citation omitted); *see also*

---

That count alleges that Kist's emailing of SPS information to his personal email was unauthorized and in violation of the Shrink Packaging Systems Corporation Agreement Concerning Confidential Information. *See id.* ¶ 108.

*Spencer Sav. Bank SLA v. McGrover*, No. A-1899-13T3, 2015 WL 966151, at *7 (N.J. Super. App. Div. Mar. 5, 2015) ("The [NJCROA] requires proof that a plaintiff was damaged in business or property as a result of the proscribed conduct.  [Plaintiff] urges that public policy requires that we interpret this plainly-worded phrase expansively to include [its] costs of investigation and attorneys' fees as damage to its business.  Bedrock principles of statutory construction preclude such an indulgence.").  And Plaintiff's statement that it "has been damaged in an amount to be proven at trial" is a conclusory allegation. *Bramshill Invs.*, 2020 WL 4581827, at *5 (stating that the complaint "merely consists of various unsupported and conclusory allegations claiming that Plaintiff has suffered damages" and that "[s]uch conclusory allegations . . . are insufficient to plausibly plead damage to 'business or property'").  Plaintiff has failed to plead that it was "damaged in business or property" as required by the NJCROA.  Count VI is accordingly dismissed.

### C. Defend Trade Secrets Act (Count VII) and New Jersey Trade Secrets Act (Count VIII)

The DTSA and NJTSA "contain[] virtually identical definitions of trade secret, misappropriation, and improper means" and thus "[t]he analysis under the DTSA folds into that of NJTSA." *Austar v. Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355 (D.N.J. 2019); *Bramshill Invs.*, 2020 WL 4581827, at *3 (considering DTSA and NJTSA claims together).  The Court therefore considers the claims together.  The DTSA states that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  Defendant argues that Plaintiff's federal and state claims for misappropriation of trade secrets should be dismissed because Plaintiff has not plausibly pled a "misappropriation" as

required by both statutes.[6]  Br. at 9-14.  The parties agree that "[t]here are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of trade secret without consent."  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 907-08 (3d Cir. 2021).  Plaintiff only addresses improper acquisition.  Opp. at 18-24.

The DTSA states that "misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]"  18 U.S.C. § 1839(5)(A).  "'[I]mproper means' . . . includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means[.]" 18 U.S.C. § 1839(6).[7]  These provisions prohibit knowingly acquiring a trade secret through theft or breach of a duty to maintain secrecy.  18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839(5)(A); 18 U.S.C. § 1839(6).  Improper acquisition occurs when a defendant agreed to abide by a confidentiality agreement but "impermissibly sent the trade secrets to her personal email account in violation of [p]laintiff's policies and confidentiality agreement."  *Bramshill Invs.*, 2020 WL 4581827, at *4; *see also AUA Priv. Equity Partners, LLC v. Soto*, No. 17-8035, 2018 WL 1684339, at *7 (S.D.N.Y. Apr. 5, 2018) ("Because [defendant] is alleged to have uploaded [plaintiff's] trade secrets from her work laptop to her personal cloud-based storage without [plaintiff's] permission and in direct violation of her confidentiality agreements that she signed, the complaint plausibly alleges that she acquired the trade secrets by improper means, *i.e.*, theft and in breach of her duty to maintain secrecy.").  This is exactly what Plaintiff alleges.  The

---

[6] Defendant concedes for purposes of the motion that "Plaintiff has sufficiently pled the existence of a trade secret." Br. at 10.  Defendant also does not contest the interstate commerce requirement.

[7] As noted, "the NJTSA contains virtually identical definitions of 'misappropriation' and 'improper means'" as the DTSA.  *Bramshill Invs.*, 2020 WL 4581827, at *3 n.4 (citing N.J.S.A. § 56:15-2).

FAC claims that Defendant, without authorization, knowingly sent trade secrets to his personal email in violation of both company policies and his confidentiality agreement.[8]  FAC ¶¶ 77, 88, 133.  Plaintiff sufficiently pleads misappropriation under the DTSA and NJTSA based on improper acquisition.  The fact that Kist was privy to the information as an SPS employee and could use the information in his capacity as such is inconsequential—Plaintiff alleges that Kist exceeded his authority by sending the information to his personal email and thus acquired it in his personal capacity by improper means.

Defendant cites *Herley Industries, Inc. v. R Cubed Engineering, LLC*, No. 20-02888, 2021 WL 4745230 (E.D. Pa. Oct. 12, 2021), but that case is inapposite.  The *Herley* court, considering a motion for summary judgment, noted that "acquisition of a trade secret amounts to misappropriation only where the initial acquisition is improper."  *Id.* at *6.  In that case, the plaintiff and the defendant had a "Teaming Agreement" which "anticipated the parties would exchange trade secrets and other confidential information during their relationship."  *Id.*  The court ruled that plaintiff "cannot now assert that the trade secrets it shared with [defendant] as part of its business relationship were improperly obtained by [defendant] at the outset."  *Id.*  Here, Kist was given authority to access information as part of his role with SPS, but he then allegedly exceeded that authority by emailing the information to his personal email.  FAC ¶¶ 77, 88, 133.

The motion is denied as to Counts VII and VIII.

### D.  Conversion – Count IX

Defendant next moves to dismiss Count IX, which alleges conversion.  Under New Jersey law, a conversion claim requires the plaintiff to prove that: "(1) the defendant wrongfully exercised

---

[8] As noted above for purposes of Plaintiff's NJCROA claim, Defendant conceded, and the Court accepts as true, that Kist emailing SPS information to his personal email was unauthorized.

dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013). "[T]he tort of conversion may be applied only to interference with tangible property, and courts have consistently held that intangible property cannot be the subject of such a claim." *O'Brien Oil Pollution Serv., Inc. v. Kapoor*, 06-2945, 2009 WL 2407399, at *2 (D.N.J. Aug. 4, 2006) (citation omitted); *see also Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) ("[C]ourts in [the District of New Jersey] have held that intangible property cannot be the subject of a conversion claim." (citation omitted)).

Defendant first argues that Plaintiff's conversion claim fails because Plaintiff has not alleged any interference with *tangible* property. Br. at 18-19. The Court agrees. Plaintiff alleges that Kist emailed certain documents and information from his Company email to his personal email. FAC ¶ 77. Plaintiff also alleges that "Kist has wrongfully withheld, and is wrongfully withholding, property belonging to SPS, including financial data, financial projections, competitive threat analyses, sales and cost information, and governance documents"—*i.e.*, the same information he allegedly emailed to himself. *Id.* ¶ 146. Thus, Plaintiff has only alleged that Defendant is in possession of digital/computer files which are not embodied in a physical medium.[9] This is insufficient to state a claim for conversion. *Argush v. LPL Fin. LLC*, No. 13-7821, 2014 WL 3844822, at *6 (D.N.J. Aug. 5, 2014) ("[A] claim for conversion of intangible property, such as electronic files or information, will not lie." (citation omitted)); *Slim CD, Inc.*, 2007 WL 2459349, at *12 (dismissing conversion claim where "the only property at issue . . . is

---

[9] While the documents and information were arguably contained within SPS' computers and/or servers—*i.e.*, in a physical medium—the computers or servers are not what is alleged to have been converted.

16

intangible customer transaction data transmitted via computer"); *K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita*, No. 06-0729, 2006 WL 1281291, at *3 (D.N.J. May 10, 2006) (dismissing conversion claim as to electronic customer list, market information, sales prices, and other items because such items were "not tangible property and thus cannot be the subject of a conversion claim," and noting that the claim also failed because Defendant's possession of those items "would not have prevented Plaintiff from using them"); *cf. Video Pipeline*, 210 F. Supp. 2d at 568-69 (finding a conversion claim was plausibly pled where plaintiff alleged that the party "exercised control and custody over *physical copies* of their [movie] trailers" (emphasis added)).  Plaintiff argues that Kist allegedly "took, and improperly withheld, *documents*" which constitutes tangible property.  Opp. at 35 (emphasis in original) (citing FAC ¶ 146).  However, the FAC only alleges that Defendant emailed himself digital copies of the documents, not that he took physical documents.  FAC ¶ 77.  Plaintiff's conversion claim in Count IX is dismissed.

Defendant also argues that the conversion claim should be dismissed because Plaintiff has not alleged that "Defendant wrongfully exercised dominion or control over Plaintiff's property *to the exclusion of Plaintiff's rights in that property*."  Br. at 19 (emphasis in original).  The FAC alleges that Defendant emailed himself copies of the documents and information, *id.* ¶ 77, and thus it appears that Plaintiff still has possession of copies of such information.  Plaintiff does not plead that it has been prevented from accessing or using the documents/information in any way.  Thus, Plaintiff's conversion claim fails for this additional reason.  *See Fainsbert v. Cuthbert*, No. 06-2017, 2006 WL 2096057, at *5 (D.N.J. July 27, 2006) ("'[A]n owner [cannot] state a claim for conversion when it retains originals or other copies of documents another improperly uses because the owner is not deprived of the beneficial use of the information.'" (quoting *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001))).

### E.  Unjust Enrichment – Count X

Defendant seeks dismissal of Plaintiff's unjust enrichment claim, and Plaintiff does not contest the motion.  Opp. at 2 n.1, 16 n.8.  Count X is thus dismissed.

## IV.  CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss the First Amended Complaint, D.E. 13, is **GRANTED in part** and **DENIED in part**.  Counts VI, IX and X are **dismissed without prejudice**.  Counts IV and V are **dismissed without prejudice** except as to the allegations that Defendant sent himself proprietary and/or trade secret information.  Plaintiff may file an amended complaint that cures the identified deficiencies within thirty (30) days.  If Plaintiff does not file an amended complaint within this time, the claims dismissed herein will be dismissed with prejudice.  The motion is otherwise **denied**.  An appropriate Order accompanies this Opinion.

Dated: September 1, 2023

_____
John Michael Vazquez, U.S.D.J.